[No. 2443.]

## JOHN MAY *v.* THE STATE.

1. PRACTICE—POSTPONEMENT of the trial requested in this case was properly refused because the application therefor disclosed a total want of diligence to obtain the absent testimony. Moreover, the evidence of the absent witnesses, except the witness Riggs, as set forth in the application, was identical with evidence produced on the trial, and Riggs's testimony, considered in the light of the evidence adduced, was not probably true.
2. SAME—MURDER.—CHARGE OF THE COURT is properly confined to murder of the first degree when, as in this case, the evidence shows only a killing upon express malice, and negatives a homicide of a lower degree.
3. SAME—ACCOMPLICE TESTIMONY.—In the absence of testimony tending to inculpate a State's witness as an accomplice, the trial court properly refused a special charge upon the law of accomplice testimony.
4. SAME—FACT CASE.—See the statement of the case for evidence *held* sufficient to support a conviction for murder in the first degree.

APPEAL from the District Court of Lamar. Tried below before the Hon. D. H. Scott.

The appellant in this case was convicted in the first degree for the murder of one Henry Moore, in Lamar county, Texas, on the sixth day of January, 1885. A life term in the penitentiary was the penalty assessed.

John Crowder was the first witness for the State. He testified that he and the defendant lived in the Indian Territory in January, 1885. On the sixth day of that month they crossed the Red river into Lamar county, Texas, and went to the Burleson store, where they met the deceased, Henry Moore. Moore asked for a drink of whisky and witness gave it to him from his bottle. A short while aftewards Moore asked for another drink and defendant gave it to him from his bottle. After staying about the store for some time the three parties started back to the Nation, deceased walking about eight steps in front of witness and defendant, with a sack of flour on his back. Defendant had witness's Winchester rifle on his shoulder, carrying it, he said, to relieve witness, who was carrying a full pair of saddle bags. Before reaching the river, traveling in the order stated, defendant lowered the Winchester and shot the deceased in the back.

Deceased dropped and rolled over, and defendant, standing in his tracks, shot him thrice more. Witness asked defendant: "What do you mean?" He replied: "I meant to kill him; he stole Garl Vincent's beeves." Witness and defendant then left the scene af the killing together. The witness went that day to Mrs. James's house to see the sheriff of the county in the Indian Territory in which he and defendant lived. While he was talking to and telling the sheriff about the killing of the deceased the defendant was talking to the deputy sheriff. Defendant remained about that neighborhood some few days and then went to Lake West in the Nation. Two or three days elapsed before the witness told anybody in Texas about the killing of the deceased. The first person he told in Texas was a Mr. Garrett, a private citizen. When the parties left the Burleson store, a few minutes before the shooting, the deceased got to telling about how he could fight, shoot, cut, kill, etc. He was saying nothing when he was shot. Deceased was a negro and had the reputation of being a bad, rascally, mean, overbearing man. Witness told H. C. Pierson, a Texas justice of the peace, about the killing two or three days after he told Garrett. Neither witness, defendant, nor deceased were drunk at the time of the shooting, but each had drunk some liquor and felt it enough to be jolly. Deceased was killed in Lamar county, Texas.

Rufe Burleson testified, for the State, in substance, that he saw the body of the deceased on the night of the day after he was killed. The body showed two or three bullet holes in front and one in the back. Several days afterwards the witness saw defendant, and defendant told him that he killed the deceased, and that John Crowder had nothing to do with the killing. He said that he previously told deceased that he would kill him if he (deceased) killed any more of Vincent's cattle, and that he killed deceased because deceased did kill Vincent's cattle. Previous to his death the deceased said that he wanted to see the defendant; that he had a settlement to make with him. Witness understood him to mean by "settlement" that he designed having a fight with defendant.

A. B. Wilson, Rufe Burleson's clerk, testified, for the State, in substance, that defendant and John Crowder came to Burleson's store together on the fatal day. Deceased came a short time afterwards and bought a box of snuff. Crowder gave him a nickel to buy a cigar. He then went to dancing for the amusement of the white people. He took several drinks of

whisky with Crowder and defendant. While deceased was dancing, defendant said to him: "You want to kill another of Garl's cows." Crowder, defendant and deceased left the store together, going towards the river. A gun, which witness understood belonged to Crowder, was taken off by some one of the party. Crowder and defendant soon returned to the store, saying that defendant had left a package of shot. The deceased was then down at the river, hallooing and singing. Defendant got his shot and he and Crowder left, the defendant carrying the gun. A short time afterwards the witness heard three shots fired down about the river, and fifteen or twenty minutes later he went to the place and saw the dead body of the deceased. Witness saw no weapon on the body, but did not examine it particularly. The shots were fired about ten minutes after the defendant and Crowder left the store the last time. Defendant, deceased and Crowder were considerably under the influence of whisky when witness last saw them.

Joe Crane testified, for the State, that he saw the body of the deceased some time after the shooting. One ball entered the back and three the breast. The shirt showed that one of the balls entered the body after it had fallen.

Deputy Sheriff Polk Bevens testified, for the State, that he never heard any one accused of the killing of deceased until a warrant for the arrest of the defendant was placed in his hands. Witness arrested defendant in Arkansas, about twelve months after the killing of deceased. He saw defendant once before that, at the mouth of Bois d'Arc, but as defendant did not cross to the Texas side of Red River, witness could not then arrest him. The State closed.

Justice of the peace H. C. Pierson testified, for the defense, that fully one week, and possibly two, or may be three weeks, elapsed after the killing of deceased before John Crowder told witness about it.

Jim Wheeler testified, for the defense, that he saw deceased in the Indian Nation two or three days before he was killed. Deceased asked witness where defendant could be found. Witness replied that he did not know with certainty. Deceased then said, with an oath, and exhibiting a pistol: "I am going to kill John May before sunset. He has accussd me of stealing Vincent's cattle, and I am going to kill him and the whole d—d Vincent outfit." Witness, knowing deceased to be a desperate and dangerous negro, reported the threats to defendant.

H. B. Dennis, Rufe Burleson and Joe Crane concurred in pronouncing the deceased a man of infamous character, desperate, insulting and overbearing, and extremely likely to execute a threat.

The motion for new trial raised the questions discussed in the opinion.

No brief for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE.   I.   We perceive no error in the action of the court refusing defendant's application to postpone the trial of the cause.   No sufficient diligence was shown to obtain the testimony of the absent witnesses.   The facts expected to be proved by all the absent witnesses, except the witness Riggs, were proved by other witnesses on the trial, and were not controverted by the State.   As to the facts expected to be proved by the witness Riggs, there is no probability whatever of their truth, as shown by the evidence adduced on the trial.   Defendant's confession, and all the evidence in the case, conclusively contradict the existence of such facts.

II.   It was not error to omit to charge the law of murder in the second degree, and manslaughter.   There is not a particle of evidence in the case which would demand, or even warrant such charges.   The evidence conclusively shows a clear case of murder upon express malice.   When the evidence, as in this case, totally fails to raise an issue of a lower degree of homicide than murder in the first degree, the court need not, and should not, charge upon any lower grade of homicide.   (Smith v. The State, 15 Texas Ct. App., 139; Darnell v. The State, Id., 70; Davis v. The State, 14 Texas Ct. App., 645; Benevides v. The State, Id., 378; Rhodes v. The State, 17 Texas Ct. App., 579; Bryant v. The State, 18 Texas Ct. App., 107; Johnson v. The State, Id., 385; Jackson v. The State, Id., 586.)

III.   There was no error in refusing to give the special charge requested by defendant in regard to accomplice testimony. There was no evidence showing that the witness Crowder was an accomplice with defendant in relation to the murder.   Defendant himself stated that Crowder had nothing to do with it, and the other evidence in the case corroborates his statement. It could not have changed the result had the special charge been

given, and had the jury believed that Crowder was an accomplice, because his testimony was fully corroborated by other evidence.

IV. There is no error in the charge of the court. It is a full, fair and correct explanation of the law applicable to the case. The definition and explanation of express malice therein given is in accordance with the authorities. (Willson's Cr. Forms, No. 710, p. 332, and cases there cited.)

We find no error whatever in the conviction. The evidence establishes a most malicious and atrocious murder, and but for the bad character of the deceased, the jury would doubtless have assessed against the defendant the death penalty.

The judgment is affirmed.

*Affirmed.*

Opinion delivered December 17, 1886.